MILLER *v.* STEVENS.

1. WORDS AND PHRASES—"AVOCATION" AND "VOCATION" DEFINED.
    An avocation is what calls one away from other work; a vocation, or calling, that to which one is called by some special fitness or sense of duty.

2. LICENSES—SINGLE ACT DOES NOT CONSTITUTE A VOCATION REQUIRING LICENSE.
    A single sale or act of a private citizen in relation to a vocation prohibited by statute without a license is not, standing alone, carrying on the forbidden business.

3. BROKERS — "BUSINESS CHANCE BROKER" — LICENSES — SINGLE TRANSACTION DOES NOT CONSTITUTE ONE A BROKER.
    A single transaction in which plaintiff, whose regular business was selling coal on commission, acted as the agent of the seller in selling a business was not such an engaging in the business of a "business chance broker," within the meaning of Act No. 306, Pub. Acts 1919, as amended by Act No. 387, Pub. Acts 1921, as to preclude his right to recover his commission because he was not licensed under said act.

4. CONTRACTS—IMPLIED CONTRACT.

 A contract is implied where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used, or things done by them, or other pertinent circumstances attending the transaction.

5. TRIAL—IMPLIED CONTRACT—EVIDENCE—DIRECTED VERDICT.

 In an action for services rendered, where plaintiff claims a commission from the seller of a business under an implied contract to pay him for acting as agent in said sale, the fact that plaintiff first rendered a joint bill to both defendant and the buyer, instead of to defendant alone, while proper for the jury to consider, *held*, in view of all the circumstances, not to preclude the court from submitting the issue of an implied contract to the jury.

6. SAME—EVIDENCE—SUFFICIENCY.

 Whether plaintiff's testimony, taken at its strongest, raised an issue of fact for the jury upon the allegations in his declaration, is the test when a directed verdict is requested for defendant.

7. SAME.

 Evidence for plaintiff *held*, sufficient to raise an issue of fact for the jury.

Error to Kent; Perkins (Willis B.), J. Submitted April 12, 1923. (Docket No. 61.) Decided October 26, 1923.

Assumpsit in justice's court by Alexander W. Miller against George F. Stevens for a commission on the sale of a business. There was judgment for plaintiff, and defendant appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Affirmed.

*Rolland J. Cleland,* for appellant.

*Colin P. Campbell,* for appellee.

STEERE, J. This case was commenced in justice's court and appealed from there by defendant to the

circuit court of Kent county where on re-trial plaintiff recovered a judgment of $300 for his services in procuring for defendant a purchaser of a business called the Parisian Dye House located on South Division street in the city of Grand Rapids.    Upon the trial defendant's counsel timely moved and requested the court for a directed verdict in his behalf on the ground that the testimony showed plaintiff assumed to act during the transaction in the capacity of a "business chance broker," which brought him within the provisions of Act No. 306, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 6897 [24, 25]), entitled:

"An act to define, regulate and license real estate brokers, real estate salesmen and business chance brokers and to provide a penalty for violation of the provisions hereof."

Sections 1 and 2 of that act provide as follows:

"It shall be unlawful for any person, firm, partnership association, copartnership or corporation, whether operating under an assumed name or otherwise, from and after January first, nineteen hundred twenty, to engage in the business or capacity, either directly or indirectly, of a business chance broker, a real estate broker or real estate salesman within this State without first obtaining a license under the provisions of this act."

Section 2 (as amended by Act No. 387, Pub. Acts 1921) :

* * * "A business chance broker within the meaning of this act is any person, firm, partnership association, copartnership or corporation, who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, leases or offers to lease, or negotiates the purchase or sale or exchange of a business, business opportunity, or the good will of an existing business for others as a whole or partial vocation."

At the time of the events involved here Miller's

business was selling coal, mostly in car load lots, though sometimes less, and prior to engaging in that business he had been for many years a produce dealer. In the winter of 1920-21 he and Stevens boarded at the same hotel in Grand Rapids where they became what Miller termed "hotel acquaintances." During their casual talks together in the lobby Miller learned that Stevens, who was employed in the Wolverine Brass Works, owned a dyeing business known as the Parisian Dye House which he was disposed to sell because he could not give it proper personal attention.

The next summer, on July 3, 1921, Miller learned in conversation with a tailor named Deebs to whom he was trying to sell some coal that he contemplated starting a cleaning and dyeing plant. Recalling what Stevens had said about his dye house the previous winter Miller called him by 'phone the next day, inquired if he still wanted to sell his dye house, and if he should send a man out to see him. Stevens expressed his willingness to sell and through plaintiff's instrumentality the parties were brought together. Negotiations followed which ultimately resulted in Stevens selling the Parisian Dye House to Deebs for $6,000.

Plaintiff testified, and was not disputed, that up to this time he had never taken part as an agent, or broker, in buying or selling or exchanging or offering for sale, any business, business property or good will of a business for others, nor ever advertised or held himself out as engaged in such business. He did, however, admit that on one occasion since then he had at the request of an acquaintance named Kelly taken him around in his automobile to see prospective customers for some kind of a watch and clock dial business which Kelly sold to a young fellow, offering to pay him for his services and he told him he did not want anything; that Kelly later came to him again

and wanted to pay him something and he accepted $50. Kelly confirmed this, stating that after he made the sale he asked Miller how much he owed him "and he said not a cent," and about two weeks later he spoke to him about it again to which Miller replied, "if it would make me feel better I could give him something" but would not name any amount, and later Kelly gave him $50. Whatever the significance of the latter service and acceptance of compensation might be before, contemporaneous with or in any way related to the instant transaction, the question of plaintiff's violation of said Act No. 306 must be tested by acts done and conditions existing at or before the time of the alleged offense.

The proofs are that plaintiff had never directly or indirectly offered or rendered services for others of the kind covered by the act prior to the occasion involved here. The question of his guilt turns on the one transaction. If his services on that occasion class him as a "business chance broker," it may be conceded he could not recover, under prevailing authorities:

"Although courts are by no means agreed either as to the construction or effect of such statutes. The presumption is that the broker has complied with the law and is duly licensed, and the burden of proof is upon him who alleges to the contrary.

"Such statutes, however, do not ordinarily apply to the case of a private individual not carrying on the business of a broker, and such an one may recover an agreed commission for a single sale though he had no license (citing decisions)." 2 Mechem on Agency (2d Ed.), § 2479.

While volumes have been written and an endless variety of decisions are to be found dealing with various kinds of brokers, such as "real estate broker," "stock broker," "insurance broker," "produce broker," "note broker," "merchandise broker," "exchange

broker," "ship broker," "pawnbroker," etc., counsel cite us to no authority, and we have not discovered any, where the subject of "business chance broker" is mentioned or discussed, outside the act referred to, which apparently coined the term and defines it for the purposes of the act.

Following the definition to its conclusion, we find its scope restricted to those who for compensation perform the acts of agency enumerated "as a whole or partial vocation." From the apparent pains taken to define the term it is to be assumed the final word "vocation" was used advisedly. Had "avocation" been adopted there would be greater force in defendant's contention that a single act constitutes an offense. Though often inaccurately used as synonymous,

"An avocation is what calls one away from other work; a *vocation*, or *calling*, that to which one is called by some special fitness or sense of duty." Fernald's English Synonyms, Antonyms and Prepositions.

"Vocation is literally a calling. It conveys the idea of systematic employment in an occupation appropriate to the person employed. It implies specific aptitude in the person, the result of training."—Smith's Synonyms Discriminated.

Plaintiff's regular business, or vocation, was selling coal on commission. It can be safely said without reviewing the authorities that the courts have quite generally held that a single sale or act of a private citizen in relation to a vocation prohibited by statute without a license is not, standing alone, carrying on the forbidden business. Plaintiff's participation as an intermediary in negotiations for the deal involved here was not, under the circumstances shown, such an engaging in the business of a "business chance broker" as would, under the statutory definition, preclude his recovery for the services rendered.

Plaintiff's claim is based on an implied contract.

He admits he made no claim for compensation until after the services were rendered.     A contract is implied where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction.     Where there is no express contract a contract may be implied in fact, where one engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated, and although there be no express stipulation between the parties for wages or price the law implies an understanding or intent to pay the value of the services rendered.     Defendant contends in the instant case that the services were gratuitous and compensation an after-thought of plaintiff, because no mention of anticipated compensation was made by him when his services were offered, accepted and rendered and his first bill for pay thereafter was rendered by him to "M. Deebs and George Stevens for sale of dye plant on Division avenue, $6,000 cash, five per cent., $300.00," as a copy of it shows.     Plaintiff testifies that he expected compensation for his services, which were rendered for defendant, accepted by him and continued during the negotiations at his request; that when the parties were closing the deal he heard Deebs say, "Miller will want $500 out of this" and Stevens said: "Let's finish this," and then they went inside where Deebs made Stevens a payment; that while he represented Stevens he did not at first know who was to pay because he "did not know but what the two would split and both pay it," but Deebs handed the bill back to him and said to send it to Stevens, and he learned that in those transactions the seller pays the commission.

While plaintiff's rendering a joint bill for his

services to both Deebs and Stevens, instead of to
Stevens only, was a proper matter for the jury to con-
sider, when taken in connection with his and other
testimony in the case, we cannot say as a matter of
law it precluded the court from submitting the issue
of fact of an implied contract to the jury.    Plaintiff's
testimony is positive that Stevens replied affirmatively
to his inquiry as to whether he wanted to sell his dye
house and accepted his offer to send Deebs to him,
which opened the negotiations, and during their con-
tinuance he represented Stevens, did various things to
help the deal along at his request, and at one time
when the latter thought he had another prospective
customer he told plaintiff that he was representing him
and between the two they ought to land one of them,
said he had an appointment with the other man at
the Eagle hotel, had plaintiff take him over there in
his car, saying he would keep away from Deebs until
the next Monday and that plaintiff "should keep
Deebs on the string," which he did successfully as
subsequent events proved.

Plaintiff's testimony taken at its strongest raised
an issue of fact for the jury upon the allegations in
his declaration, which is the test when a directed
verdict is requested for defendant.    The court cor-
rectly instructed the jury that absence of a broker's
license did not bar recovery, submitting the issues of
gratuitous service and implied contract under fair and
proper instructions.

We find no reversible error and the judgment will
stand affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK,
BIRD, SHARPE, and MOORE, JJ., concurred.