## MORRIS v. O'NEILL.

1. BROKERS—CONTRACTS TO PAY COMMISSION FOR SALE OF REAL ESTATE MUST BE IN WRITING.

Under 3 Comp. Laws 1915, § 11981, contracts to pay commission for the sale of real estate are void unless they are in writing and signed by the party to be charged.

2. TRIAL—REOPENING CASE—ABUSE OF DISCRETION.

In an action on a note, where defendant's right to have the amount of a commission on the sale of a lot credited on the note depended on the validity of the contract to pay the commission, refusal of the trial court, at the close of evidence, to reopen the case and allow defendant to prove a valid contract was an abuse of judicial discretion, where no delay was requested and no prejudice could result to plaintiff.

3. BROKERS—LICENSES—ONE NOT A BROKER UNLESS THE BUSINESS IS HIS VOCATION OR PARTIAL VOCATION.

One who makes only one or two sales is not necessarily a real estate broker within the meaning of Act No. 306, Pub. Acts 1919, requiring such brokers to obtain a license,

---

¹Brokers, 9 C. J. § 60; 44 L. R. A. 601; 9 L. R. A. (N. S.) 933; 17 A. L. R. 891; 4 R. C. L. 300 *et seq.;* 1 R. C. L. Supp. 1111; 4 R. C. L. Supp. 261; 6 R. C. L. Supp. 249; ²Trial, 38 Cyc. pp. 1365, 1366; ³Brokers, 9 C. J. § 65.

but to constitute one a broker he must be engaged in the business to such an extent that it can be said to be his vocation or partial vocation.

4. SAME—RIGHT OF ONE TO RECOVER COMMISSION NOT A LICENSED BROKER.

One engaged in manufacturing wall beds, who did not hold himself out to be a real estate broker, was not a broker within the meaning of Act No. 306, Pub. Acts 1919, requiring brokers to obtain a license, by reason of the fact that he had made one sale previous to the one for which he claimed commission, and therefore his failure to obtain a license did not preclude his recovery of a commission in the instant case.

Error to Wayne; Collins (Joseph H.), J., presiding. Submitted April 15, 1927. (Docket No. 111.) Decided July 29, 1927.

Assumpsit by Don M. Morris against Eugene J. O'Neill on a promissory note. Judgment for plaintiff on a directed verdict. Defendant brings error. Reversed.

*Joslyn, Joslyn & Joslyn,* for appellant.

*Stevenson, Butzel, Eaman & Long* (*Charles F. Hemans* and *Charles M. A. Martin,* of counsel), for appellee.

McDONALD, J. This suit was brought to recover on a promissory note for $2,500, dated July 20, 1921, and payable on or before one year from date with interest at 7 per cent. per annum. On the back of the note appeared the following:

"It is agreed by both parties that this note can be renewed in part at the maturity of the note."

The defendant claims that before the note came due the plaintiff had become indebted to him in the sum of $840, for a commission on the sale of real estate;

---

⁴Brokers, 9 C. J. § 65.

that when it became due on July 20, 1922, he asked the plaintiff to credit him with the $840, and to renew the note for the balance. This the plaintiff declined to do and began this suit. On the trial when the proofs were closed the plaintiff moved for a directed verdict on two grounds: *first,* that the defendant had not shown a valid contract in writing to pay a commission for the sale of real estate; and *second,* that the defendant was unlawfully engaged in the business of selling real estate, in that he had not obtained a license as required by Act No. 306, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 6897 [24-42]), and that, therefore, if his contract with the plaintiff had been otherwise valid, he could not recover a commission. The court sustained both contentions and directed a verdict for the plaintiff in the full amount of his claim. Judgment was entered on the verdict. The defendant brings error.

The record shows a lack of competent evidence tending to establish a written contract to pay a commission for the sale of the real estate. Such contracts are void unless they are in writing and signed by the party to be charged. Section 11981, 3 Comp. Laws 1915.

In view of this situation, it was the duty of the circuit judge to direct a verdict for the plaintiff, but, when he indicated his intention to do so, counsel for the defendant asked to have the case re-opened that he might introduce further testimony on the question of the contract. He said:

"Well, I have a witness here, the former stenographer in the employ of the Murphy Wall Bed Company, and we desire to call this witness for the purpose of showing we wrote a letter dictated by Mr. O'Neill in which he stated to Mr. Morris, the plaintiff, that if he sold this lot, he expected the usual commission, and that in reply to that letter, Mr. Morris sent a telegram which this witness saw and read stating that he would pay the regular commission of three per cent. on the sale price of this property; that the copy of the letter

written to Mr. Morris, that the telegram from Mr. Morris to Mr. O'Neill referred to, and the stenographic notes from which the letter written by Mr. O'Neill to Mr. Morris was torn from the book and that these letters and telegrams disappeared from the office of Mr. O'Neill in the Murphy Wall Bed Company. Florence Bowden is the name of the witness."

Under the circumstances, the refusal of the court to re-open the case and to permit this testimony to be taken, was an abuse of judicial discretion. The witness was present in court. No delay was requested. No prejudice could result to the plaintiff. The testimony offered was competent. It was necessary to the defendant's case. The refusal to receive it amounted to a denial of justice for which the judgment ought to be reversed and a new trial granted unless the failure of the defendant to obtain a real estate broker's license precludes his recovery on his contract for a commission.

In 2 Mechem on Agency (2d Ed.), p. 2091, § 2479, it is said:

"Where a statute or ordinance requires brokers to be licensed, and forbids, imposes a penalty for, or otherwise makes unlawful, the exercising of the vocation without a license, it is generally held that an unlicensed broker cannot recover either upon the contract or upon a *quantum meruit* for services rendered by him in that capacity."

Act No. 306, Pub. Acts 1919, as far as it is applicable to this case, reads as follows:

"SECTION 1. It shall be unlawful for any person * * * to engage in the business or capacity either directly or indirectly, of a * * * real estate broker * * * within this State without first obtaining a license under the provisions of this act.

"SEC. 2. A real estate broker within the meaning of this act is any person * * * who for a compensation or a valuable consideration sells or offers for sale,

buys or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who leases or offers to lease or rents or offers for rent any real estate or the improvements thereon for others, as a whole or partial vocation."  *  *  *

It is conceded that the defendant had not obtained a license to engage in the real estate business. Was he required to do so? Was he a real estate broker within the meaning of the act? The statute furnishes its own definition of a real estate broker. In commenting on the use of similar language in defining a "business chance broker" in *Miller* v. *Stevens*, 224 Mich. 626, Mr. Justice STEERE said:

"Following the definition to its conclusion, we find its scope restricted to those who for compensation perform the acts of agency enumerated 'as a whole or partial vocation.' From the apparent pains taken to define the term, it is to be assumed the final word 'vocation' was used advisedly. Had 'avocation' been adopted, there would be greater force in defendant's contention that a single act constitutes an offense. Though often inaccurately used as synonymous,

"'An avocation is what calls one away from other work; a vocation, or calling, that to which one is called by some special fitness or sense of duty.' Fernald's English Synonyms, Antonyms, and Prepositions.

"'Vocation is literally a calling. It conveys the idea of systematic employment in an occupation appropriate to the person employed. It implies specific aptitude in the person, the result of training.' Smith's Synonyms Discriminated."

With this understanding as to the language used, we interpret the statute to mean that, to constitute one a real estate broker, it is not sufficient that he make one sale or two sales. It must appear that he is engaged in the business to such an extent that it can be said to be his vocation or his partial vocation. The defendant's vocation or business was the manufacturing of Murphy wall beds. He and another man had bought the Murphy Wall Bed Company from the plain-

tiff. It is not claimed that his vocation was the selling of real estate; but that it was a part of his vocation because he made the sale in suit and one previously. It is contended that because of these two transactions he was a real estate broker within the meaning of the statute.

The circumstances surrounding the sale involved in this suit do not indicate that in selling the property the defendant was engaged in the real estate business as a partial vocation. It appears that after the plaintiff sold the Murphy Wall Bed Company he went to California. He and the defendant were friends. The defendant had formerly worked for him in the Murphy Wall Bed business. He left many of his business affairs with the defendant included in which was the sale of the property in question. Undertaking the sale of the property in these circumstances in no way tends to show that the defendant was engaged in selling real estate as a partial vocation. It would seem to negative the claim that he was so engaged. The plaintiff knew that defendant was not in the business of selling real estate. He evidently considered the employment as a friendly matter for which he was not expected to pay. Before he went to California, the plaintiff had been negotiating with Mr. Barak for the sale of the property. He testifies that defendant knew about these negotiations and says:

"I asked him to continue the negotiations with Mr. Barak on the deal."

It is very clear that this transaction has no value as evidence to support the plaintiff's contention that the defendant was selling real estate as a partial vocation.

As to the other real estate transaction, the defendant testified:

"I have never been in the real estate business and never sold a piece of property except the Selden lot.

I never acted as agent for the sale of any other property and have never received any money as an agent. Exhibit 9, offered in evidence and received, is a letter I wrote to Mr. Morris. That letter mentions about my making $1,000 on the side which was for the sale of the Barak property on the boulevard. The deal fell through which was previous to the deal I had with Mr. Barak and I could have gotten $1,000 out of it. That deal was with Mr. Hyman Barak, a brother of the Barak who bought the Selden lot and if the deal had gone through I would have gotten $1,000 for using my influence."

Assuming this to have been a regular real estate transaction, it is not sufficient in itself to establish the claim that the sale of real estate was the defendant's partial vocation; and the sale in suit adds nothing to its probative force. The defendant was a manufacturer of Murphy wall beds. He did not hold himself out to the public as a real estate broker. He was not known in that capacity. The record shows that, except on the two occasions mentioned, he has never directly or indirectly been engaged in any real estate transactions. He did not pursue that business as a vocation or as a partial vocation and therefore was not a real estate broker within the meaning of the statute.

No other questions require discussion.

On this record the circuit judge erred in directing a verdict for the plaintiff.

The judgment is reversed and a new trial granted, with costs to the defendant.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.