*In re* PIERSON'S ESTATE.

PIERSON *v.* SANBORN.

1. CONTRACTS—IMPLIED CONTRACTS.

A contract may be implied in fact if there is no express contract where one engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated.

2. EXECUTORS AND ADMINISTRATORS — CLAIMS AGAINST ESTATES — SERVICES FOR RELATIVE—IMPLIED CONTRACTS—EVIDENCE.

Expression of gratitude by aged uncle in ill health to four nephews who lived a half mile away for services performed by them in conducting his small farm during a period of 11 years *held*, at most mere expressions of testamentary intent insufficient to support claim against his estate, based on implied contract, especially where it is not shown that even such expressions were known to plaintiffs.

3. SAME—STALE CLAIMS—SERVICES FOR RELATIVE—DEMAND.

Strong and convincing proof is required where the claim against an estate is stale or where it is for services for a relative extending over a considerable period and no demand was ever made for compensation during decedent's lifetime.

4. SAME—SERVICES FOR RELATIVE—FAMILY RELATION—IMPLIED CONTRACTS.

Fact that four nephews, claiming implied contract for services rendered uncle living on small nearby farm during course of about 11 years, did not live in family relation with the uncle *held*, not determinative of issue as to whether or not such a contract existed.

5. SAME—SERVICES FOR RELATIVE—ESSENTIALS OF CONTRACT—PRESUMPTIONS.

To maintain claim for services performed for about 11 years for uncle by nephews, living on nearby farm, it is essential that claimants clearly show expectations of remuneration therefor

during lifetime of uncle, otherwise when claim is first made after death presumption obtains that payment was made or that it was not intended to demand payment.

6. Same—Claims Against Estates—Suspicion.

Claims against a dead man's estate, which might have been made against him while living, are always subjects of just suspicion.

7. Evidence—Implied Contracts—Conjecture.

Evidence to establish an implied contract for services rendered a decedent must show something more than a mere possibility, guess or conjecture as a court must decide upon the evidence and not guess in default thereof.

8. Work and Labor—Implied Contracts—Services Rendered One Now Deceased.

No implied contract on part of one now deceased to pay for services rendered to him during his lifetime arises where services are accounted for on more likely grounds than a promise of payment.

9. Executors and Administrators—Services for Relative—Joint Claim—Accounts—Infants.

Disallowance by commissioners on claims of joint claim of four nephews against uncle's estate for services rendered in course of about 11 years in conduct of farm, for which they had made no request for pay during his lifetime *held*, proper, where there is no proof they heard or relied upon his expressions of gratitude or that they had ever agreed among themselves to present a joint claim and divide the resulting proceeds and no accounts were kept by claimants, who were emancipated minors but 7 to 16 years of age when services commenced, there being insufficient evidence to establish an implied contract.

North and Butzel, JJ., dissenting.

Appeal from Lapeer; Cramton (Louis C.), J. Submitted October 6, 1937. (Docket No. 35, Calendar No. 39,677.) Decided December 14, 1937.

In the matter of the estate of Robert J. Pierson, deceased. Robert J., Jr., Roderick, Donald, and Dewey Pierson presented their claim for services

rendered decedent during his lifetime. Claim denied. Claimants appealed to circuit court. Judgment for claimants. Defendant administrator appeals. Reversed.

*Geo. W. DesJardins* and *John G. Libbers,* for claimants.

*John R. Rood,* for defendant.

POTTER, J. Robert J. Pierson died February 13, 1936. His four nephews, sons of his brother Dewey Pierson who died eight years before and who owned a 143-acre farm adjoining his 40 acres, presented a joint claim against the estate of Robert J. Pierson, deceased, in the sum of $3,092.89 to the commissioners on claims appointed by the probate court which was disallowed by them. An appeal was taken to the circuit court where a joint verdict was rendered in favor of claimants for $2,180.83. Judgment was entered, and the administrator appeals.

The claim presented covers services rendered by the nephews to their uncle over a period of about 11 years, commencing in 1925 and continuing until his death in February, 1936.

Plaintiffs base their right to recover upon an implied contract. They seek to recover jointly for services rendered by them incident to the operation of their deceased uncle's farm. At the time the services alleged were begun, claimants, Dewey, Roderick, Robert and Donald, were 7, 13, 14 and 16 years of age, respectively. The mother testified the sons were emancipated and whatever they earned outside the home was theirs. They lived at the farm of their parents one-half mile cross-lots from the uncle's house.

The uncle had been in poor health for some years and during the 11 years covered by the claim of plaintiffs he was dependent largely upon the assistance rendered by the nephews. They hauled out the manure, plowed and fitted the ground, sowed and planted the crops, helped thresh the grain and did various other things that the uncle wanted done. They at times did not use the uncle's tools. There is no proof of any agreement by claimants to enter upon a joint venture. During the 11 years covered by the claim for services, claimants never asked deceased to pay them for their services. No record was kept at any time of what services were rendered or who rendered them, and no charges made of what such services were worth. All the boys were not always at home. At times, two of them would work for the uncle, sometimes only one. One of plaintiffs was married in 1928 and another in 1933, when they left home.

Besides plaintiffs' mother and other members of the Pierson family, five witnesses were sworn in behalf of plaintiffs, who had no apparent interest in the outcome of the litigation. These five and the mother all testified to the effect the boys did most of the uncle's work, that he would often call them by telephone and ask them to come over and they would comply with his request. They also stated the uncle told them he didn't know how he would repay them for all they had done for him; that he intended to pay them but he didn't have the money. Another witness stated deceased "said he didn't have very much, but what he had he had figured the boys was entitled to it and should have it and they was going to have it some day." The quoted testimony was the substance of Robert Pierson's statements on many

occasions.  Such statements are not .shown ever to have been made to plaintiffs, or to any of them.

Plaintiffs seek to recover on an implied contract.

"Where there is no express contract a contract may be implied in fact, where one engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated." *Miller* v. *Stevens,* 224 Mich. 626, 632.

Plaintiffs' actions in making no request for compensation and in keeping no account or record belies any anticipation of reward.  A contract implied in fact arises when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor.  It is stretching the elasticity of credulity too far to believe these children, 7, 13, 14 and 16 years of age, respectively, were emancipated and performed the services in question for their ailing uncle upon the basis they presently expected to get pay sometime.  It is much more natural to think they went to help their uncle at his request and, because of their relationship, at the suggestions of their parents,—that the services were rendered as an act of kindness to a relative who was sick.  There is nothing to indicate these children began the rendition of services to their uncle on any promise of recompense, and no proof of any subsequent change in the relationship of the parties. Robert Pierson often said plaintiffs had done much to help him and when he was through with the farm they would get their pay.  It is not shown that even these expressions of gratitude were known to plaintiffs, or any of them.  At most, these were mere expressions of testamentary intent.

"Claimant has not, under the circumstances of this case, overcome the presumption that such services

rendered by a member of deceased's family or a closely associated relative are gratuitous where no express contract is shown, nor against such presumption established an implied contract, and that what is shown to have been said by deceased as to the disposition of this property goes no further than a declaration of testamentary intent.

"It is well-settled law that:

" 'Particularly strong and convincing proof is required where the claim is stale, or where the services extended over a considerable period and no demand for compensation was ever made during the decedent's lifetime.' 18 Cyc. p. 533." *Vandecar* v. *Nowland's Estate*, 188 Mich. 429.

The fact plaintiffs did not live in the family of their uncle determines nothing.

"The fact that the nephew did not live under the same roof where his uncle boarded, and was therefore not a 'member of his family' in the strict sense of the term, does not have a conclusive and determining effect upon the matter." *Dobbin* v. *Dobbin* (Mo. App.), 204 S. W. 918.

In *Green* v. *Green,* 119 Ky. 103 (82 S. W. 1011), where a nephew who lived two miles away rendered services more onerous than those claimed to have been performed by plaintiffs, it was held that where the services were rendered without any intention at the time on the part of plaintiff of charging therefor, or intention or agreement at the time to pay therefor, the law would presume the services were rendered gratuitously and deny recovery.

Expressions of an intent by the uncle to compensate the nephew made in conversations with third persons during some 15 or 20 years are no part of the contract where it was not shown they were communicated to the nephew to induce him to render the services and that he performed in consideration thereof. *In re Duke's Estate,* 57 Misc. 541 (109 N. Y. Supp. 1087).

It is necessary for plaintiffs to have had the idea they were to be paid, and this can be shown only by manifestations on his part. It has been held that where one was promised orally by an uncle that if his niece was allowed to remain with him and his wife, she would never want, the terms of such a contract were incapable of being enforced because its terms were too indefinite and uncertain. *Walls' Appeal*, 111 Pa. 460 (5 Atl. 220, 56 Am. Rep. 288).

In *Dobbin* v. *Dobbin, supra,* the Kansas City, Missouri court of appeals, in affirming the trial court, approved the charge:

"The court instructs the jury that where a party voluntarily does an act or renders services for another, and there was no intention at the time that he should charge therefor, or an understanding that the other should pay, he will not be permitted to recover, because that which was intended originally as a gratuity cannot subsequently be turned into a charge."

*Hertzog* v. *Hertzog,* 29 Pa. 465, held it was error for the lower court to allow a jury to infer a contract from statements made by the party to other witnesses that he intended to pay his son for his work.

In *McEwan* v. *Toronto General Trusts Corp.,* 36 Ont. Law, 244, it was held that due to the staleness of the claim it would not be heeded, especially since there was no reasonable excuse for not presenting it.

"Where a claim for services or board is first made after the decease of the alleged debtor, the presumption obtains that payment was made or that it was not intended to demand payment, and evidence to establish a claim for services against a decedent's estate not made during his lifetime must be other than mere loose declarations, and must clearly and distinctly establish a contract between claimant and decedent." 24 C. J. p. 279.

In *Kelly's Estate,* 6 Pa. Dist. 685, the court said:

" 'Claims which, though on their face accruing for years, are not presented as legal demands until after the death of the alleged debtor, come before the court discredited by the claimant's own acts, and every intendment will be made against them.' It is not material that the relationship between the parties, as in the present case, is not of itself sufficient to give rise to a presumption that compensation was not expected; the failure to ask for payment during a considerable period will create a presumption either that all demands were compensated as they arose, or that it was understood that compensation was not to be made."

The court, in *Mueller's Estate,* 159 Pa. 590 (28 Atl. 491) said:

"Claims against a dead man's estate which might have been made against himself while living, are always subjects of just suspicion."

In *Estate of Miller,* 136 Pa. 239 (20 Atl. 796), it was held that when one renders personal services to another merely upon the expectation of a legacy promised without a contract obligation, the promisee takes his chances on receiving the legacy, and, if his expectations are disappointed, he can recover nothing.

Plaintiffs' testimony falls short of establishing an implied contract. *Miller* v. *Stevens, supra.*

"Evidence to establish a contract must show something more than a mere possibility, guess or conjecture. The court is to decide upon the evidence and not guess in default of evidence." *McInerney* v. *Detroit Trust Co.,* 279 Mich. 42, 49.

Stress is laid in plaintiffs' brief on the fact the nephews lived apart from their uncle and, therefore,

there is no presumption of gratuitous services. Mere space does not determine motive or intent. It would seem the boys began their services for their uncle in an endeavor to help him, probably counseled by their parents. Some courts have said that proximity is not a conclusive and determining factor. *Hyde* v. *Honiter,* 175 Mo. App. 583 (158 S. W. 83); *Green* v. *Green, supra.* In *Woods* v. *Ayres,* 39 Mich. 345 (33 Am. Rep. 396), it was pointed out that no implied contract to pay for services arises where they are accounted for on more likely grounds than a promise of payment.

The claim is a joint claim. There is no proof plaintiffs ever agreed among themselves they were to present a joint claim and divide the resulting proceeds. Nor is there any proof there ever was any joint contract, either express or implied. The fact that no accounts were kept at any time leads to the suspicion the implied contract was an afterthought. There is no question but the boys acted generously, prompted by the better instincts of a common humanity, in aiding their uncle. Possibly they expected his property would go to them at his death. The statements made by Robert Pierson in his lifetime show his gratitude and that he was not presently able to compensate his nephews. The most that can be said of his statements is that some day the boys were to be compensated; when he was through with his property, they might get their pay. These statements are testamentary in character and lack the formalities prescribed to establish a contract. None of these statements is shown ever to have been communicated to plaintiffs. This precludes any contention on their part that they acted on a promise of the uncle to make a will, and his failure to do so would allow them to recover the value of their services. We think

plaintiffs did not perform the services, for which they seek to recover, under circumstances sufficient to establish an implied contract. They failed to show they in any way heard or relied upon the uncle's expressions of gratitude. Plaintiffs' claim was properly disallowed by the commissioners on claims in the probate court.

Judgment of the trial court reversed, and case remanded for entry of judgment for defendant.

Fead, C. J., and Wiest, Bushnell, Sharpe, and Chandler, JJ., concurred with Potter, J.

North, J. (*dissenting*). This is an appeal from the allowance of a claim against the estate of Robert J. Pierson, deceased, for services alleged to have been rendered to Mr. Pierson by four of his nephews— Roderick, Robert Jr., Dewey, and Donald Pierson. The joint claim of these four nephews was disallowed in the probate court but upon appeal to the circuit court and on trial by jury the claim was allowed in the sum of $2,180.83. The administrator of the estate has appealed.

It is conceded that the claimants, herein designated as plaintiffs, have not proven an express contract; but they do assert the right to recover jointly on an implied contract for services rendered by them incident to the operation of their deceased uncle's 40-acre farm from April, 1925, to the time of their uncle's death in February, 1936. At the time of the death of Robert J. Pierson, these claimants were respectively 18, 24, 25 and 27 years of age. It thus appears that at the beginning of the rendering of such services all of the plaintiffs were minors. But the undisputed testimony is that they had been emancipated and whatever earnings accrued to them were

their property regardless of their minority. They lived at the farm home of their parents, which was located something more than a half mile cross-lots from the residence of Robert J. Pierson. Counsel stated in court that Mr. Pierson was 76 years of age at the time of his death. He had been in ill health for a number of years prior to his death; and his wife had predeceased him by about one year. They had no children. During much, if not all, of the period covered by the alleged services Mr. Robert J. Pierson was unable to do the general work upon his farm. The testimony is quite conclusive that he depended almost wholly upon his four nephews to do the necessary work on his 40-acre farm, about 20 acres of which was tillable; and in doing this work, at least to some extent, the nephews furnished tools, teams, etc.

The principal question for consideration on this appeal is whether there is, in this record, testimony sufficient to sustain the jury's finding that the deceased was obligated to pay his nephews for services rendered on the theory of an implied joint contract. Defendant made a motion for a new trial, asserting there was no evidence to support the verdict. The motion was denied.

Aside from the mother of plaintiffs and other members of the Pierson family, five witnesses were sworn in behalf of plaintiffs, and at least as to these five witnesses it can be said that so far as the record discloses they appear to have no interest in the outcome of this litigation. The following are extracts from testimony given by such witnesses:

A housekeeper who lived in the Robert J. Pierson home from October, 1934, until March, 1936, testified:

"The boys took care of the farm what I saw, hauled out the manure, plowed the land, planted the

crops, and harvested them.  *  *  *  Once I saw Mr. Pierson pay Dewey a dollar, and once Robert a dollar.''

The operator of the local telephone exchange testified as follows:

"*Q*. From 1925 to his death, do you know how frequently Mr. Pierson would call his nephews who are making this claim, and ask them to come to his place?

"*A*. I don't think he missed very many days and some days several times a day.  *  *  *

"*Q*. Do you know whether the boys responded to that when he would call them?

"*A*. Yes; they did.

"*Q*. Do you know who worked that farm, that is planted, prepared the land, planted and harvested the crops from 1925 to the death of Mr. Pierson?

"*A*. I never knew of his having anyone else there only these boys.

"*Q*. You know the boys did the work?

"*A*. Yes, sir.  *  *  *  He (deceased) said he didn't know how he was ever going to pay these boys they had done so much for him.  *  *  *

"*Q*. Did he say anything else with reference to paying them?  *  *  *

"*A*. That is what he said.  He said he intended to pay these boys, but he couldn't do it then.  *  *  *  He had mentioned along that line a good many times —these boys had worked for him and he didn't know how or when he was going to pay.''

A neighboring storekeeper testified:

"He talked with me about them (the boys) on several occasions, once about four weeks before his death, at my store, I don't recall anybody else being present.  *  *  *  He said he would pay these boys for what they had done for him sometime.  He said that very thing to me many times.''

Another of these witnesses testified:

"He (deceased) said he didn't have very much but what he had he had figured the boys was entitled to it and should have it and they was going to have it some day."

Another witness, who operated a garage in the neighboring village testified:

"In the later years of his life he (deceased) wasn't able to do any work. He came to my garage nearly every day. I know his nephews, claimants here. For the past 10 years his nephews, Robert, Roderick, and Dewey did practically all the work on his farm. * * * He (deceased) said, 'I don't know what Flora (wife of deceased) and I would ever have done had it not been for them. * * * The sad part of it is, I have never been able to pay them, but some day when I am through with it they will get their pay.' * * * I have heard him make a remark similar to that several times."

The mother of these plaintiffs gave the following testimony:

"He (deceased) told me he didn't have the money to pay them and that he would pay them when he could. * * * I don't remember the date, it was before he was taken to his bed. * * * At one time I was up to his place and I think his wife was present. Speaking of the claim by my boys here, he said they would get their pay sometime. * * * He was in very poor health during these 10 years."

This witness further testified that she never saw deceased make any payment to plaintiffs, that they did not keep any record of the work they did for their uncle, and that "they never asked him to be paid."

In determining whether the record is sufficient to sustain the finding of the jury of an implied contract

it must be borne in mind that these plaintiffs, although they were nephews of the deceased, did not live in a family relation with him. The somewhat distant relationship did not give rise to a presumption that plaintiffs' services were to be gratuitous.

"Where the relation is that of uncle and nephew, without more, the ordinary rule obtains that the law presumes that the services are to be paid for; and it is a question for the jury whether the circumstances under which the services were rendered are such as to overcome the ordinary rule. Indeed, the only effect of the relationship seems to be to make the ordinary rule more easily rebuttable than is commonly the case." 28 R. C. L. p. 683.

As to distant relationship in and of itself not giving rise to the presumption that services are rendered gratuitously, see *In re Wigent's Estate*, 189 Mich. 507; *In re Rader's Estate*, 234 Mich. 679; *Morton v. Rainey*, 82 Ill. 215 (25 Am. Rep. 311). This latter case involved the claim of a nephew against the estate of his uncle, and the court said:

"Where a child remains with a parent after majority and in the same apparent situation as when a minor, in the absence of a contract, no recovery can be had for services rendered. * * *
"But in this case the deceased was not the parent of appellee, and the rule that would ordinarily govern in a case of that kind, does not control the facts of this case."

In the instant case there did not exist a relationship between the plaintiffs and Robert J. Pierson, the deceased, which gave rise to a presumption that plaintiffs' services were gratuitous, nor does the record contain testimony establishing any other fact or circumstance from which such a presumption would arise. In such a case beneficial services having been rendered and accepted, a promise to pay

therefor is implied.  *Hosmer* v. *Wilson,* 7 Mich. 294
(74 Am. Dec. 716) ; *Ward* v. *Warner,* 8 Mich. 508;
*Donovan* v. *Halsey Fire Engine Co.,* 58 Mich. 38;
*Pupaza* v. *Laity,* 268 Mich. 250.

"A contract is implied where the intention as to
it is not manifested by direct or explicit words be-
tween the parties, but is to be gathered by implica-
tion or proper deduction from the conduct of the
parties, language used or things done by them, or
other pertinent circumstances attending the trans-
action.  Where there is no express contract a con-
tract may be implied in fact, where one engages or
accepts beneficial services of another for which com-
pensation is customarily made and naturally antici-
pated, and although there be no express stipulation
between the parties for wages or price the law im-
plies an understanding or intent to pay the value of
the services rendered."  *Miller* v. *Stevens,* 224 Mich.
626.

On the question whether the testimony presents
an issue of fact for the jury as to there having been
an implied contract, the instant case is well within
the decisions of this court in the following cases:
*Sammon* v. *Wood,* 107 Mich. 506; *Ashley* v. *Smith's
Estate,* 152 Mich. 197; *Maynard* v. *Schrumpf's Es-
tate,* 192 Mich. 494; *In re Scully's Estate,* 199 Mich.
181.

But appellant presents the further contention that
the testimony in this case will not sustain recovery
by plaintiffs as *joint* claimants.  In this connection
appellant asserts that because of their varying ages
and other circumstances plaintiffs must have ren-
dered unequal services, and there being no evidence
of an assignment of their respective claims, the
separate and individual claims of plaintiffs cannot
be combined and collected as a *joint* claim.  This
question was first raised on the motion for a new

trial. A review of the record discloses that almost uniformly the matter of these services and paying for the same was referred to in a collective or joint manner; and we think it cannot be said that there is not sufficient testimony in this record to sustain the finding not only that there was an implied contract to pay, but that such implied contract was one in which plaintiffs were jointly interested.

Other questions raised by appellant and discussed in the brief have been considered, but we find in them nothing which would justify reversal of the judgment entered in the circuit court, which should be affirmed with costs to appellees.

BUTZEL, J., concurred with NORTH, J.