# STATE OF MICHIGAN

# COURT OF APPEALS

---

BENITO TOME,

       Plaintiff/Counter-Defendant-
Appellant,

v

STEVEN E. TOME,

       Defendant/Counter-Plaintiff-
Appellee

and

T&T, INC.,

       Defendant.

UNPUBLISHED
October 19, 2017

No. 333405
Wayne Circuit Court
LC No. 14-001039-CK

---

Before: BOONSTRA, P.J., and METER and GADOLA, JJ.

PER CURIAM.

In this breach of contract dispute, plaintiff/counter-defendant Benito Tome (Benito) appeals as of right an opinion and order in which the trial court ruled that (1) Benito and his son, defendant/counter-plaintiff Steven E. Tome (Steven) each agreed to repay half of a mortgage taken out on property located at 40920 5 Mile Road in Livonia, Michigan (the 5 Mile property), (2) Steven failed to establish that the court should set aside a quitclaim deed he executed assigning his interest in the 5 Mile property to Benito, and (3) Steven was entitled to half of any rental income generated by the 5 Mile property during the time in which he was also obligated to make mortgage payments. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In 1986, Benito, his wife Barbara, and Steven jointly purchased the 5 Mile property through a land contract. The parties initially rented out two houses located on the property, but after some time, Benito and Barbara moved into the larger of the two houses. Steven explained that he and his parents used the rental income generated by the houses to make the payments due under the land contract; they paid off the land contract in May 2002.

-1-

In June 2002, Steven and Benito[1] took out a 30-year mortgage on the 5 Mile property in the amount of $163,600. As part of the transaction, Steven assigned his interest in the 5 Mile property to Benito in order to secure a more favorable interest rate on the mortgage. Steven testified that he and Benito split the mortgage proceeds in roughly equal shares and agreed to each repay half the mortgage obligation. Steven used his portion of the proceeds to pay off personal debts and to make a down payment on a bar while Benito used his portion to pay off personal debts and retained $25,000 in cash from the disbursement. Although Steven testified that he and Benito agreed to split the mortgage payments equally, Benito testified that Steven agreed to repay the entire mortgage out of his profits from the bar.

Steven explained at trial that he created T&T, Inc. for the purpose of purchasing the bar. Benito was listed as a purchaser on the purchase agreement for the bar, but in 2003, he signed a document relinquishing his interest in the bar. Benito explained that he signed the document because the bar was struggling financially and he wanted to avoid liability for any of its debts. After operating the bar for several years, Steven returned the business to its original owners because he could no longer afford to pay the associated expenses.

Benito lived in the larger of the two houses on the 5 Mile property after the parties executed the mortgage in 2002, and Steven lived in the house with Benito on several occasions after the parties purchased the property, last moving out in 2006. Steven testified that he made all of the mortgage payments on the 5 Mile property for approximately 11 years after the parties executed the 2002 mortgage. During that time, Benito collected rental income from the smaller house on the property and did not share any of the income with Steven. Steven testified that he did not demand any portion of the rental income because Benito claimed he needed the money. Steven also testified that he asked Benito to pay half the mortgage payments, which were roughly $1,500 per month, but Benito said he could not afford to make the payments, so Steven continued to make the payments himself.

Steven testified that, at some point after he moved out of the house in 2006, his brother, David Tome, moved into the house with Benito. Steven explained that neither Benito nor David contributed to the mortgage payments. However, Benito testified that David paid him $700 in rent each month. In April 2010, Steven sent Benito a letter asking him to start paying his portion of the mortgage, but Benito refused. Benito then asked Steven to sign a document agreeing to repay the mortgage in full. When Steven refused, Benito sent Steven a letter accusing him of fraud. Steven then stopped making payments on the mortgage. After Steven stopped making payments, Benito modified the mortgage to reduce the monthly payments from $1,500 to approximately $1,000 per month. Benito began making the mortgage payments in full using the $700 rental income he received each month from David and the $700 rental income he received each month from the smaller house.

In January 2014, Benito filed a complaint against Steven raising claims of breach of contract, breach of fiduciary duty to act in good faith, conversion, oppressive conduct, and violation of managerial duties. Benito alleged that he only agreed to take out a mortgage on the

---

[1] Barbara died in May 2001.

5 Mile property because Steven promised to repay the mortgage in full. He further asserted that Steven breached his duty to act in good faith by refusing to repay the mortgage in full, and violated his duties as president of T&T, Inc. by failing to disclose the financial condition of the bar and acting in a manner inconsistent with Benito's interests as a minority member. Steven filed a counter-complaint raising claims of breach of contract, promissory estoppel, unjust enrichment, and misrepresentation. Steven alleged that Benito agreed to repay half the mortgage and agreed to allow Steven to retain an ownership interest in the 5 Mile property after Steven executed the quitclaim deed.

Following a bench trial, the trial court issued an opinion and order in the matter. The court noted that Benito waived any claim regarding damages relating to his ownership interest in the bar because he agreed that he relinquished his ownership interest in 2003. Regarding the obligation to make mortgage payments, the court concluded as follows:

> Steven testified at trial that he and his father had each agreed to pay 50% of the mortgage, but that Steven ended up paying 100% from 2002 until 2012 because Benito could not afford to pay. Benito never clearly disputed this testimony; rather, he testified that they intended to use the profits from the bar to pay the mortgage. . . . The Court finds that Steven's testimony in this regard is more credible than Benito's. The Court does not mean to suggest that Benito is prevaricating; rather, it appeared that Benito had trouble recalling some facts. Accordingly, the Court is of the opinion that Benito and Steven had agreed that each would pay 50% of the mortgage payments for the property.

The trial court explained that Steven and Benito both agreed that Steven executed the quitclaim deed so the parties could obtain a more favorable interest rate on the mortgage, and concluded that Steven failed to raise any valid reason why the court should set aside the quitclaim deed. Finally, regarding Steven's entitlement to rental income, the court concluded as follows:

> The Court agrees that both Steven and Benito should be making the mortgage payments, but Benito cannot have it both ways—he cannot expect Steven to make mortgage payments without receiving any benefit from the property. It seems clear that the parties intended that the mortgage payments would be covered, at least in part, with income generated by the bar and the property itself. Now that Steven no longer owns the bar, the parties' intent would be accomplished by dividing both the rent proceeds and the mortgage payments 50%—50%, with the understanding that whoever pays the mortgage will receive a share of the rents.

The trial court ordered the parties to calculate the manner in which they wished to accomplish an equal division of the mortgage payments, taking into account the time periods during which both parties made the mortgage payments in full, and ordered that Steven would be entitled to half the rental income from the 5 Mile property during any period he was also obligated to contribute to the mortgage payments.

## II. CONTRACT EXISTENCE

On appeal, Benito argues that the trial court erred by concluding that Steven was entitled to half the rental income generated by the 5 Mile property and that the parties agreed to each repay half the mortgage. Whether a contract exists is a question of fact that we review de novo. *AFT Mich v Michigan*, 303 Mich App 651, 659; 846 NW2d 583 (2014).

The five elements of a valid contract are: (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Calhoun Co v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012). "Most of the elements listed above reflect the fact that the parties to a contract must have a meeting of the minds on all essential terms of a contract." *Id.* (quotation marks and citation omitted). If mutual assent does not exist, a contract does not exist. *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 372; 666 NW2d 251 (2003). Courts determine whether a meeting of the minds occurred by using an objective standard and looking at the express words and actions of the parties. *Calhoun Co*, 297 Mich App at 13.

Contracts can be divided into two categories: express contracts and implied contracts. *McInerney v Detroit Trust Co*, 279 Mich 42, 46; 271 NW 545 (1937). "An express contract is one where the intention of the parties and the terms of the agreement are declared or expressed by the parties, in writing or orally, at the time it is entered into." *Id.* (quotation marks and citation omitted). Alternatively, a contract may be implied in fact " 'where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction.' " *Rowe v Montgomery Ward & Co*, 437 Mich 627, 639-640; 473 NW2d 268 (1991), quoting *Miller v Stevens*, 224 Mich 626, 632; 195 NW 481 (1923).

The trial court did not err by concluding that a contract existed between the parties that required Benito and Steven to each repay half the mortgage for the 5 Mile property. Steven testified at trial that he and Benito each agreed to repay half the 30-year mortgage, while Benito testified that Steven agreed to repay the entire mortgage out of his profits from the bar. The trial court found Steven's testimony more credible. Considering Steven's testimony, the trial court could reasonably conclude that Steven and Benito entered an express oral contract to each repay half the mortgage obligation. There is no dispute that the parties were competent to enter a contract and that such an agreement was supported by consideration because both Steven and Benito benefited from the mortgage proceeds. When an express contract governs the subject of the parties' agreement, courts may not imply a contract. *AFT Mich*, 303 Mich App at 661.

Even assuming the parties did not enter an express contract, however, the trial court could reasonably conclude that a contract implied in fact existed between the parties that required them to each repay half the mortgage. Benito argues on appeal that the circumstances surrounding the case are insufficient to demonstrate the existence of a contract because Steven made the mortgage payments in full for 11 years and received the "vast majority, 64%" of the mortgage proceeds. Accepting the allocation of funds outlined in the 2002 settlement statement as true, however, which Benito did not effectively contest at trial, of the $163,600 loan amount, Benito received $70,528.44, Steven received $87,020.78, and $6,050.78 went to cover settlement

charges. Although Steven received a slightly larger share than Benito, the split was roughly 55% to 45%, as opposed to 64% to 36% as Benito claims. Additionally, Benito ignores that Steven assigned his interest in the 5 Mile property over to Benito as part of the transaction. The trial court found that the quitclaim deed executed by Steven was valid, and Steven has not challenged that determination on appeal. Under these circumstances, Benito cannot show that Steven received a significantly better deal as a result of the transaction that would support the conclusion that Steven must have agreed to repay the mortgage in its entirety. If anything, Benito was placed in a better position than Steven by obtaining both 45% of the proceeds of the mortgage and Steven's underlying ownership interest in the property.

Neither does Steven's act of making the mortgage payments for 11 years suggest that he agreed to repay the mortgage in full. Steven testified at trial that he repeatedly asked Benito to contribute to his portion of the mortgage payments due, but Benito refused and claimed that he could not afford to make the payments, so Steven continued to make the payments himself. Nothing about these circumstances suggests that Steven agreed to repay the entire mortgage.

Benito also argues that the trial court erred by awarding Steven half of any rental income generated by the 5 Mile property after he assigned his interest in the property to Benito. On this point, we agree. Neither Benito nor Steven testified at trial that the parties expressly agreed that Steven would receive half of any rental income generated by the 5 Mile property, or that Benito would be required to apply any rental income to cover the mortgage payments due. The record evidence also does not support that a contract to apply the rental income to the mortgage payments may be implied from the circumstances of the case. Although there was some evidence that Benito, Steven, and Barbara used the rental income generated by the property to cover payments due under the original land contract, this evidence alone is insufficient to demonstrate that Steven and Benito intended to use the rental income to cover the payments for the 2002 mortgage. No other attending circumstances or language or conduct of the parties, as demonstrated by the record, suggests that the parties mutually intended or agreed to use the rental income to cover the mortgage payments. Although Steven's act of assigning his interest in the property to Benito would not preclude the parties from executing such an agreement, nothing in the record suggests that this agreement existed. Therefore, the trial court erred by concluding that Steven was entitled to half the rental income generated by the 5 Mile property for any time he was also obligated to contribute to the mortgage payments.

## III. STATUTE OF LIMITATIONS

Finally, Benito argues that Steven's breach of contract claims were barred by the applicable statute of limitations.[2] Although Benito raised this argument in his proposed findings of fact and conclusions of law submitted to the court before trial, the issue is unpreserved because the trial court did not address the issue at the bench trial or in its subsequent opinion and order. See *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). Nevertheless, "this Court may overlook preservation requirements if the failure to consider the

---

[2] This Court reviews de novo whether a claim is barred by the applicable statute of limitations. *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227; 859 NW2d 723 (2014).

issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster–Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

Initially, we need not address whether Steven's claim for rental income was barred by the statute of limitations because the trial court erred by concluding that such a contract existed. Regarding Steven's claim for mortgage payments, MCL 600.5807(8) states that the general period of limitations is six years for an action to recover damages or sums for breach of contract. Pursuant to MCL 600.5827, "[e]xcept as otherwise expressly provided, the period of limitations runs from the time the claim accrues. . . . [I]n cases not covered by [MCL 600.5829 to MCL 600.5838] the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." Our Supreme Court has held that "the date of the 'wrong' referred to in MCL 600.5827 is the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which defendant breached his duty." *Frank v Linkner*, ___ Mich ___, ___; 894 NW2d 574 (2017) (quotation marks and citation omitted).

Benito argues on appeal that, because Steven made the mortgage payments in full for the first 11 years, the limitations period expired on his breach of contract claim six years after the parties executed the mortgage in 2002. However, the trial court merely concluded that Benito and Steven each agreed to repay half the mortgage, it did not conclude that Benito was required to contribute 50% to each mortgage payment due since the inception of the mortgage in 2002, nor does the record support that such a term was necessarily part of the parties' agreement. The manner in which the parties would repay their respective obligations was not clearly delineated.[3]

In its opinion, the trial court stated that it expected the parties to "calculate the manner in which they wish to accomplish the equal division of the mortgage payments, taking into account the respective periods during which each party exclusively paid the mortgage . . . ." At the time Steven filed his counter-complaint against Benito, Steven had not yet repaid more than half the mortgage, having paid only 11 years out of the 30-year mortgage. Therefore, it is not unreasonable to conclude that Benito had not yet breached his contract with Steven, and Steven had not yet been harmed by any breach, such that the period of limitations had not yet begun to run on his claim.

Steven only asserted a breach of contract claim against Benito after Benito sued Steven and attempted to establish that Steven should be liable to repay the entire mortgage. Steven's breach of contract claim against Benito could thus be accurately characterized as a claim of

---

[3] Benito does not raise this argument on appeal, but the fact that the parties did not clearly specify the time or manner of performance would not, standing alone, cause their contract to fail. "[J]udicial avoidance of contractual obligations because of indefiniteness is not favored under Michigan law, and so when the promises and performances of each party are set forth with reasonable certainty, the contract will not fail for indefiniteness." *Calhoun Co*, 297 Mich App at 14. Time of performance, when such a term is indefinite in a contract, is typically a term that a court may supply for the parties. *Id.* at 15.

anticipatory breach. "Under the doctrine of anticipatory breach, if a party to a contract, prior to the time of performance, unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance." *Paul v Bogle*, 193 Mich App 479, 493; 484 NW2d 728 (1992) (quotation marks and citation omitted). Because a specific date and manner of performance was not fixed by the parties, Benito has not shown that Steven's claim began to accrue in 2002 when the parties executed the mortgage and when Steven made the first mortgage payment. Therefore, Benito has not shown that Steven's claim for breach of contract regarding the mortgage payments is barred by the statute of limitations.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Michael F. Gadola