*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KLIMENT MILANOV and TRENTEN INGELL,

Plaintiffs-Appellants,

v

UNIVERSITY OF MICHIGAN and REGENTS OF
THE UNIVERSITY OF MICHIGAN,

Defendants-Appellees.

UNPUBLISHED
September 19, 2025
1:35 PM

No. 361638
Court of Claims
LC No. 20-000056-MK

Before: LETICA, P.J., and RICK and BAZZI, JJ.

PER CURIAM.

This case is one of several filed over these last five years on behalf of college and university students related to educational modifications mandated in response to the worldwide COVID-19 pandemic. Plaintiffs appeal as of right an order of the Court of Claims' granting summary disposition to defendants, the University of Michigan and the Regents of the University of Michigan (collectively, U of M), under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. BACKGROUND

Plaintiffs were students at the University of Michigan during the 2020 Winter Semester. They filed this action seeking prorated refunds for tuition, fees, and room and board.[1] During the early days of the COVID-19 pandemic in March 2020, U of M moved all classes online via emergency remote teaching, cancelled various campus events, and prohibited gatherings in keeping with the executive orders in effect at the time. Plaintiffs take no issue with U of M's actions, which were for the health and safety of students, faculty, and staff. Rather, plaintiffs challenge U of M's decision to retain all of the tuition, fees, and room and board payments that

---

[1] Although framing this claim as one for room *and* board, i.e., housing *and* meals, plaintiffs do not advance arguments concerning meals, only student housing.

-1-

plaintiffs made, despite the change in classroom instruction, lack of campus services, and plaintiffs leaving student housing.

In the Court of Claims, plaintiffs argued that U of M's actions deprived them of the full educational experience and benefits that they paid for. Plaintiffs advanced claims for breach of contract or, in the alternative, unjust enrichment. Plaintiffs argued that there were implied contracts between themselves and U of M for live, in-person instruction. They claimed that U of M had breached these implied contracts by moving classes online without issuing prorated refunds. Plaintiffs' theory rested on the premise that emergency remote teaching was inferior to that of live, in-person instruction. As to fees, plaintiffs contended that there were implied contracts between themselves and U of M for services to be provided in exchange for fees paid during enrollment at U of M, and that U of M breached these implied contracts by retaining the fees without providing all contracted services. Regarding room and board, plaintiffs contended that U of M breached the housing contracts by retaining payments, despite not providing housing for the entire semester. Alternatively, plaintiffs asserted that U of M was unjustly enriched by retaining plaintiffs' payments for tuition, fees, and room and board. The Court of Claims disagreed and granted summary disposition to defendants under MCR 2.116(C)(10). This appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 473; 986 NW2d 427 (2022). A motion is properly granted pursuant to MCR 2.116(C)(10) when "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Zwiker*, 340 Mich App at 474. "[T]his Court considers the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Id*. at 473. Additionally, we review de novo the existence and interpretation of a contract. *Allen v Mich State Univ*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket Nos. 358135, 358136, and 358137); slip op at 10. "Whether a contract is ambiguous is a question of law, while determining the meaning of ambiguous contract language becomes a question of fact." *Zwiker*, 340 Mich App at 474. Finally, "[w]hether a specific party has been unjustly enriched is generally a question of fact, but whether a claim for unjust enrichment can be maintained is a question of law, which we review de novo." *Allen*, ___ Mich App at ___; slip op at 11 (quotation marks and citation omitted).

### B. TUITION AND FEES

Plaintiffs first argue that the Court of Claims erred by determining that there was no evidence of implied contracts for exclusively live, in-person instruction or for certain types of campus services. We disagree.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Allen*, ___ Mich App at ___; slip op at 11 (quotation marks and citation omitted). The burden is on the party asserting breach of contract to show both that a contract exists and the terms that were allegedly breached. *Id*. at ___; slip op at 11. Contracts can

be express or implied, *id.* at ___; slip op at 11, and plaintiffs do not dispute that there were no express contracts governing their breach-of-contract claims regarding tuition and fees. Instead, plaintiffs' sole argument is that there were implied-in-fact contracts governing such claims. An implied-in-fact contract occurs "under circumstances which, according to the ordinary course of dealing and common understanding, of [people], show a mutual intention to contract." *Id.* at ___; slip op at 12 (quotation marks and citation omitted). An implied-in-fact contract "does not exist, unless the minds of the parties meet, by reason of words or conduct." *Id.* at ___; slip op at 11 (quotation marks and citation omitted). Such contracts mandate "mutual assent just like any other contract, with the difference being that in the case of an implied-in-fact contract, the mutual assent is inferred from the parties' words and actions since the parties did not directly express their mutual assent and intent to contract." *Id.* at ___; slip op at 11-12.

Here, regarding tuition, although the 2020 Winter Semester course catalog showed that classes were explicitly designated as being online or in-person, a disclaimer provided that "[c]ourse offerings are subject to change. The final authority for changes in course offerings rests with the academic departments." Given that part of a course's offering is the time, place, and manner of instruction, such language demonstrates that U of M retained the right to change the mode of instruction. Although approximately 95-99% of classes at U of M during the 2020 Winter Semester were originally in-person, this represented a mere expectation that plaintiffs would receive live, in-person instruction throughout the entirety of the 2020 Winter Semester. Nothing about the course catalog or U of M's historical conduct suggested an assent on the part of U of M to provide live, in-person instruction under any and all possible circumstances. See *Zwiker*, 340 Mich App at 478 (holding that a course catalog, registration portal, and marketing information failed to show that the university agreed to provide exclusively live, in-person instruction).

Regarding fees, plaintiffs point to the Fee Schedule, which provided that "[a]ll persons, not specifically exempted, who are using University facilities and services must register and pay the appropriate fee," as evidence that fees were exchanged for services. However, plaintiffs ignore that the Office of the Registrar provided that "[b]y registering, you assume full responsibility for any fees incurred". This Court has already held such language to be dispositive. See *Allen*, ___Mich App at ___; slip op at 8 n 4, 16; *Zwiker*, 340 Mich App at 475. Additionally, the Fee Schedule provided that fees were "mandatory assessments" and that "[a]ll students who enroll[ed] [would] be assessed the additional fees shown." Such language showed that the fees at issue were mandatory and associated with enrollment, not with any exchange of services. This comports with affirmations from one of U of M's representatives that all fees for the 2020 Winter Semester were due at the time of registration by January 8, 2020 and that, by registering, students took responsibility for all fees incurred. Furthermore, the evidence showed that the fees were paid regardless of whether plaintiffs utilized the associated services.

U of M additionally presented evidence that the fees plaintiffs paid were used during the 2020 Winter Semester to support ongoing university operations, which remained available to students throughout the entire semester. U of M proved that it paid its staff regardless of the manner of instruction used. In other words, the fees were not premised on student usage. That refunds for fees were available up until a certain time period does not alter this conclusion because the mere possibility of a refund does not automatically lead to the conclusion that fees must have been exchanged for services. Fees could still be an incident of registration while also being refundable if students withdrew from the university by a certain period. In other words, if fees

were part of *enrolling* at U of M, *disenrolling* by a certain period logically could lead to refunds. Finally, even assuming there was an implied contract, plaintiffs failed to show any breach because U of M produced unrebutted evidence showing that the fees were used to support the ongoing operations of the university throughout the Winter 2020 semester.

There is a general implied right to receive education and services in exchange for tuition and fees, see *Allen*, ___ Mich App at ___; slip op at 16 (assuming without deciding that there was "an implied-in-fact contract agreeing to exchange tuition for educational instruction and fees for various student activities"). Nevertheless, there is no legal authority supporting the contention that such an implied right extends to the precise manner of instructional delivery or type of service, see *id*. at ___; slip op at 15 (discussing how courts defer and restrain themselves from interfering with academic decisions and how universities have the essential freedom to determine "what may be taught, [and] how it shall be taught") (quotation marks and citation omitted). In light of U of M's written indication that courses were subject to change and plaintiffs' failure to point to any evidence to the contrary, there is no genuine issue of material fact that "there was no offer—and thus no meeting of the minds—on any specific format for delivering education and services," and therefore, no enforceable contractual promise on these matters. *Id*. at ___; slip op at 16. Plaintiffs' argument lacks merit.[2]

## C.  ROOM AND BOARD

Plaintiffs next argue that the Court of Claims erred by determining that U of M did not breach any terms of the housing contracts. We disagree.

As previously stated, to establish a claim of breach-of-contract, a party must show "that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Allen*, ___ Mich App at ___; slip op at 11 (quotation marks and citation omitted). Contracts can be express or implied, *id*. at ___; slip op at 11, and the parties agree that an express contract governed plaintiffs' student housing. "This Court will enforce unambiguous contracts as written." *Zwiker*, 340 Mich App at 475. We "construe[] contractual terms in context, according to their commonly used meanings." *Id*. Ambiguity exists in a contract if the contract's "provisions are capable of conflicting interpretations." *Id*. However, "[a] contract is not ambiguous solely because the parties may interpret a term differently." *Id*. Additionally, a contract "should be read as a whole, with meaning given to all of its terms." *Detroit Pub Sch v Conn*, 308 Mich App 234, 252; 863 NW2d 373 (2014).

Here, the plaintiffs' housing contracts had clear provisions covering termination and refunds. The contracts required plaintiffs to pay "the full contract price unless your contract is terminated by University Housing in accordance with published University Housing policies." The contracts also expressly incorporated the Community Living at Michigan (CLAM) handbook,

---

[2] While we agree with plaintiffs that the Court of Claims erred by suggesting that course catalog materials can *never* create an enforceable promise, see *Allen*, ___ Mich App at ___; slip op at 15, this is not dispositive because plaintiffs have failed to show in this particular instance that the course catalog and other evidence showed a mutual intention to contract, by words or conduct, for exclusively live, in-person instruction.

stating that residents of university housing "must comply with all rules, regulations and policies as applicable to your room. These rules, regulations and policies are in the Community Living at Michigan [CLAM] handbook and may change from time to time." Contrary to plaintiffs' contentions, nothing about this language suggests that only those portions of the CLAM addressing room activities were incorporated. Pursuant to the CLAM, students could terminate their housing contracts early, but were subject to a potential termination fee, which was 80% of the remaining contractual obligation. This fee was not automatic, but would be reviewed on a case-by-case basis, and, in many situations, it was automatically inapplicable. Refunds were available if U of M agreed to terminate the contract early, and students were required to submit a specific form for early termination. Without such approval, students were "responsible for all fees remaining on the full term of the contract, even if you check out." It is undisputed that plaintiffs never sought or received termination approval.

Additionally, U of M never forced plaintiffs to move out of student housing. The evidence showed that U of M encouraged its students to leave but explicitly allowed them to remain and for their needs, including food, housing, and health services, to be met. U of M provided a form for students remaining on campus to complete, and U of M also offered a $1,200 refund for those students who chose to move out. Both plaintiffs took the $1,200 refund in exchange for voluntarily moving out of campus housing. Plaintiffs and U of M expressly agreed to terms governing price, early termination, and refunds, and it is undisputed that plaintiffs never availed themselves of these terms. Instead, plaintiffs chose to voluntarily leave and take a $1,200 refund, but the terms of the contract they agreed to still made them responsible for the remainder of their housing costs. This Court must respect the parties' intent and may not rewrite provisions at plaintiffs' request. See *Zwiker*, 340 Mich App at 475.

Plaintiffs additionally contend that the housing contracts were illusory, but their argument lacks merit. An illusory contract is "[a]n agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation." *Employers Mut Cas Co v Helicon Assoc, Inc*, 313 Mich App 401, 407; 880 NW2d 839 (2015), rev'd on other grounds by 500 Mich 986 (2017) (quotation marks and citation omitted; alteration in original). Here, U of M was bound by the contractual provisions at issue. U of M could not unilaterally bar plaintiffs from their student housing because their contracts expressly gave plaintiffs the ability to occupy their rooms from August 30, 2019, to December 20, 2019, as well as from January 5, 2020, to May 1, 2020. If U of M prevented plaintiffs from occupying their rooms for reasons beyond those contained within the housing contract, U of M would be in breach of that agreement. Moreover, U of M was bound by the terms for early termination and refunds and could not unilaterally terminate the agreement for any reason whatsoever, which plaintiffs suggest. Accordingly, plaintiffs have failed to show any promise that U of M did not perform. While plaintiffs seek a prorated refund for time spent away from student housing, they point to no contractual language that would grant them the relief they seek. See *Allen*, ___ Mich App at ___; slip op at 17; *Zwiker*, 340 Mich App at 482.

## D. UNJUST ENRICHMENT

Finally, plaintiffs argue that the Court of Claims erred by determining that there was no evidence that U of M was unjustly enriched. We disagree.

Implied contracts can be either implied in fact or implied in law. *Allen*, ___ Mich App at ___; slip op at 11. For purposes of this issue, plaintiffs argue that an implied-in-law contract existed. An implied-in-law contract is "quasi or constructive, and does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended." *Id*. at ___; slip op at 11 (quotation marks and citation omitted). Such contracts are "intricately linked with the concept of unjust enrichment." *Id*. at ___; slip op at 12. Unjust enrichment occurs when a party "has and retains money or benefits which in justice and equity belong to another." *AFT Mich v Michigan*, 303 Mich App 651, 677; 846 NW2d 583 (2014). Even without a contract, "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Allen*, ___ Mich App at ___; slip op at 12 (quotation marks and citation omitted; alteration in original).

"Courts may not imply a contract under an unjust-enrichment theory if there is an express agreement covering the same subject matter." *Zwiker*, 340 Mich App at 482. Here, there was an express housing contract between each of the plaintiffs and U of M that covered early termination and refunds, thereby precluding application of this doctrine for plaintiffs' room and board claim. This leaves only plaintiffs' claims regarding tuition and fees. There was no dispute that U of M charged the same tuition regardless of whether the class was in-person or online, which meant that U of M did not retain any additional benefit from moving its courses online. Moreover, the record indicates that U of M was able to continue to provide instruction and various services, such as housing and meals, despite the uncertainty of the global pandemic. There was no implied contract for classes to be delivered exclusively in a particular format or for services to be delivered in a particular manner, and the fees identified in this case went toward maintaining the campus and university regardless of whether students were utilizing particular services. In fact, U of M incurred significant costs as a result of its transition to online learning, and it paid its staff regardless of the manner of instruction used.

While U of M moved live, in-person courses to online learning and cancelled campus events, this was due to the unexpected COVID-19 pandemic. Even in the face of a devastating public health crisis, U of M "successfully maintained the core of its educational mission— providing instruction and various services for students—throughout the pandemic." *Allen*, ___ Mich App at ___; slip op at 16. It was not unjust, under the circumstances, for U of M to retain the tuition and fees paid by plaintiffs. Ultimately, the Court of Claims did not err in granting summary disposition in defendants' favor in this matter.

Affirmed.

/s/ Anica Letica
/s/ Michelle M. Rick
/s/ Mariam S. Bazzi